# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RONALD KEITH IRVING,

      Petitioner/Defendant.

v.

UNITED STATES OF AMERICA,

      Respondent/Plaintiff,

Case No. CIV-13-141-RAW
(Underlying Case No. CR-09-036)

## ORDER & OPINION

Before the court is Ronald Keith Irving's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence [Docket No. 1]. On July 23, 2009, Petitioner was found guilty on Count 1 of the Indictment, charging him with possession with intent to distribute cocaine base, also known as crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). The jury found the amount of cocaine base to be in excess of 5 grams. Petitioner and his co-defendant, Deandre Laron Washington, were also found guilty on Count 2 of the Indictment, charging him with conspiring to shoot a law enforcement officer to prevent his attendance or testimony in federal court proceedings against a co-conspirator in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (a)(2).

On February 17, 2010, Petitioner was sentenced to 360 months in prison, followed by eight years of supervised release. The Judgment was entered on February 22, 2010. Petitioner appealed his conviction. On November 29, 2011, the Tenth Circuit affirmed his conviction. Petitioner filed a petition for a writ of certiorari with the Supreme Court on February 24, 2012.

The Supreme Court denied the petition on April 2, 2012. Petitioner's motion is timely.[1]

Petitioner initially raised four ineffective assistance of counsel claims for relief in his habeas motion. On July 8, 2013, Petitioner filed a motion to supplement his habeas motion to add the Supreme Court decision in Alleyne v. United States, 133 S.Ct. 2151 (2013) [Docket No. 10]. The court hereby grants the motion to add Alleyne.

For the reasons set forth below, the habeas motion is denied on all grounds. In his habeas motion, Petitioner requests an evidentiary hearing and appointed counsel. As the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, no evidentiary hearing is necessary. The motion for appointment of counsel is denied as well.[2]

**FACTUAL AND PROCEDURAL HISTORY**

In February 2009, Petitioner was arrested after a successful narcotics sting orchestrated by Lieutenant Bryan Stark, the head of the Muskogee Police Department's Special Investigations

---

[1] "A one-year period of limitation applies to [a] habeas petition. 28 U.S.C. § 2255. The limitation period runs from the date on which the judgment of conviction becomes final . . . ." United States v. Ramos, 150 Fed.Appx. 752, 753 (10th Cir. 2005) (citations omitted). In this case, the judgment of conviction became final when the Supreme Court denied the petition for a writ of certiorari on April 2, 2012. See Clay v. United States, 537 U.S. 522, 527 (2003); United States v. Prows, 448 F.3d 1223, 1227 (10th Cir. 2006). As this action was filed on April 1, 2013, less than a year after the judgment became final, it is timely.

[2] "[T]here is no right to counsel in collateral proceedings." United States v. Prows, 448 F.3d 1223, 1229 (10th Cir. 2006). Pursuant to § 2255(g) and 18 U.S.C. § 3006A(a)(2)(B), the court *may* appoint counsel if it determines the interests of justice so require. "The decision to appoint counsel is left to the sound discretion of the district court." Engberg v. Wyoming, 265 F.3d 1109, 1122 (10th Cir. 2001). As the court has determined that an evidentiary hearing is not required in this case and that the interests of justice do not so require appointment of counsel, in its discretion, the court declines to appoint counsel.

Unit (hereinafter "SIU").[3] The SIU primarily handled narcotics investigations. Under Officer Stark's leadership, the SIU dramatically increased its number of search warrants and arrests, drawing media interest. Officer Stark handled the media for the SIU and became the face of the SIU for the public.

Shortly after Petitioner's arrest, Officer Stark received a note from a Muskogee County inmate, Durrell Collins, stating that someone was trying to have Officer Stark killed. When interviewed, Mr. Collins told authorities that Petitioner had contacted him in jail about arranging to have Officer Stark killed.

Mr. Collins also told authorities that Petitioner had first announced at a party in 2006 that he would pay up to $50,000 to anyone who would kill Officer Stark.[4] The likely motivation for Petitioner's desire to kill Officer Stark was the fact that Officer Stark had been involved in an investigation and prosecution of Petitioner in 2005. At the 2006 party, Mr. Collins suggested Mr. Washington might be interested, but nothing came of it at that time.

Later when both Mr. Collins and Petitioner were in jail in February 2009, Petitioner sent a note to Mr. Collins suggesting they move forward with the plan.[5] Mr. Collins and Petitioner then spoke about the plan on cell phones that had been smuggled into the jail. The cell phones were in the possession of Milton Warrior and Sean Warrior, cousins, who were also in the jail. Sean Warrior was Petitioner's cell mate. Milton Warrior was in a cell close to Mr. Collins. The

---

[3]As all of Petitioner's claims relate to his conviction on Count 2 of the Indictment, the court does not include the facts leading to his arrest and conviction on Count 1 of the Indictment.

[4]Nathan Simmons' testimony at trial corroborated this fact.

[5]The note was introduced at trial.

3

Warrior cousins allowed Petitioner and Mr. Collins to use their phones to speak to each other.

After speaking to federal investigators, Mr. Collins agreed to work with them and go along with Petitioner's plan. Petitioner supplied money to bond Mr. Collins out of jail. After Mr. Collins was released from jail, the FBI provided him with a cell phone that he used to remain in contact with Petitioner. Petitioner and Mr. Collins spoke about the arranged hit on Officer Stark several times. The FBI monitored the calls.[6]

Mr. Collins then contacted Mr. Washington. Mr. Collins and Mr. Washington met on March 9, 2009 to discuss details. Mr. Collins informed Mr. Washington that he would be paid $50,000 to kill Officer Stark and that $25,000 would be paid up front. Mr. Collins did not inform Mr. Washington that Petitioner was behind the offer. Mr. Washington agreed to kill Officer Stark for the payment. They agreed that they would travel to Muskogee together on March 11, 2009. Mr. Collins was to acquire a gun upon their arrival in Muskogee, and Mr. Washington was to shoot Officer Stark the same day. On March 11, 2009 as they entered Muskogee, Mr. Washington and Mr. Collins were stopped by law enforcement. Mr. Washington was arrested.

On March 18, 2009, the Government filed a two count Indictment against Petitioner and Mr. Washington. Count 1 of the Indictment charged Petitioner with possession with intent to distribute crack cocaine. Count 2 charged both Petitioner and Mr. Washington with conspiring to shoot a law enforcement officer to prevent his attendance or testimony in federal court proceedings in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (a)(2).

At trial, the jury heard testimony from, among several others, Officer Stark, Mr. Collins,

---

[6]During the trial, the jury heard recordings of those conversations.

Milton Warrior, Sean Warrior, Ike Alexander, Mike Beaver, Nathan Simmons, Mr. Washington, and Petitioner. Petitioner claimed that he was set up in the murder-for-hire plot. He claimed that he had given the cell phone to another inmate and that the voice on the recorded calls with Mr. Collins was not his. He also claimed that the handwriting on the note to Mr. Collins was not his. On July 23, 2009, both Petitioner and Mr. Washington were found guilty of the charges against them in the Indictment.

On appeal, Petitioner argued: (1) the indictment failed to charge a crime; (2) the indictment was duplicitous; (3) there was insufficient evidence introduced at trial to support his convictions; (4) the district court abused its discretion in excluding the testimony of a defense witness who was present in the courtroom during trial in violation of the Rule of Sequestration; and (5) the district court abused its discretion in admitting testimony from the target of the murder-for-hire scheme regarding his role in an earlier investigation and prosecution of Petitioner. The Tenth Circuit affirmed Petitioner's convictions.

**PETITIONER'S MOTION**

Petitioner argues that his attorney was ineffective for failing to: (1) obtain the testimony of Lakesha Garrett; (2) consult a voice analyst; (3) obtain a handwriting expert; and (4) independently lodge objections and motions regarding the exclusion of the testimony of Terry Warrior. Petitioner also adds the recent Supreme Court decision in <u>Allyne v. United States</u>, 133 S.Ct. 2151 (2013).

**INEFFECTIVE ASSISTANCE CLAIMS**

In order to prevail on his claims of ineffective assistance of counsel, Petitioner must satisfy the two-prong test set out in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, Petitioner must show both that his counsel's performance was deficient and that the deficiency prejudiced his defense. Id. at 687.

He must show that his counsel's "representation fell below an objective standard of reasonableness." Id. at 688. "Judicial scrutiny of counsel's performance must be *highly deferential*. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689 (emphasis added).

A reviewing court must make every effort "to evaluate the conduct from counsel's perspective at the time." Id. Moreover, a convicted defendant "must overcome the *presumption* that, under the circumstances, the challenged action '*might be considered sound trial strategy.*'" Id. (citation omitted) (emphasis added). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

To prevail, a Petitioner must also show that the error had an effect on the judgment in his case. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Even if an error had some conceivable effect, that is not enough to set aside a judgment. Id. at 693. Instead, a defendant "must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

While a defendant must prove both deficient performance and prejudice before he is entitled to relief, the court need not address the elements in that order. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Id. Moreover, "the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment." Id.

**Ground 1 – Lakesha Garrett Testimony**

Petitioner argues that his counsel was ineffective for failing to subpoena Lakesha Garrett and then resting without her testimony. Petitioner states that Lakesha Garrett would have testified about a conversation she had with Ike Alexander, about her statement to the FBI in March of 2009, and ultimately would have identified the voice on the audio recordings with Mr. Collins as Ike Alexander and not Petitioner.

Petitioner did not suffer prejudice from the absence of Lakesha Garrett's testimony. As noted above, at trial, the jury heard the recordings of conversations that were alleged to be between Mr. Collins and Petitioner. The jury also heard live testimony from Petitioner and from Ike Alexander, so heard their voices live. Thus, the jury members were able to decide for themselves whether the voice on the recordings belonged to Petitioner or Ike Alexander. Additionally, at trial, Special Agent Mike Beaver of the FBI testified that he interviewed Lakesha

7

Garrett. Mr. Beaver testified that Lakesha Garrett told him she spoke on the phone with Durrell Collins and with Ike Alexander, but not Petitioner. Id. Additionally, as the Tenth Circuit held in his appeal, there was substantial, independent evidence of Petitioner's guilt, including Petitioner's statement at a party in 2006 that he would pay $50,000 to anyone who would kill Officer Stark.

Further, Petitioner's counsel avers that Ms. Garrett told him numerous time she was willing to testify at trial. Counsel also avers that he was unable to get Ms. Garrett to meet with him prior to trial and that he questioned whether once she was on the stand she might listen to the recordings and deny it was Ike Alexander's voice. Counsel's decision not to subpoena Ms. Garrett and to rest without was not ineffective. Instead, it was sound trial strategy.

**Ground 2 – Voice Analyst**

Petitioner also argues that his counsel was ineffective for failing to consult a voice analyst to determine whether the voice on the audio tapes belonged to Petitioner. As noted above, the jury had the opportunity to hear and decide for itself whether the voice on the recordings belonged to Petitioner or Ike Alexander. There was also substantial, independent evidence of Petitioner's guilt. Petitioner suffered no prejudice by the lack of a voice analyst.

Moreover, Petitioner's counsel questioned FBI Special Agent Mike Beaver who testified that he was not familiar with any such technology and had not used it in his 20 years of service. Id. at 829. Counsel researched the existence of the technology and experts, but Petitioner did not have the financial resources to pursue it. Counsel was not ineffective.

**Ground 3 – Handwriting Expert**

Petitioner argues that his counsel was ineffective for failing to obtain a handwriting expert to verify whether the handwriting on the note that Durrell Collins testified was from Petitioner was in fact from Petitioner. Again, Petitioner did not suffer prejudice and his counsel was not ineffecient. As his counsel avers, the science is not definitive. Moreover, there was substantial, independent evidence of Petitioner's guilt, including his announcement at a party in 2006 that he would pay $50,000 to anyone who would kill Officer Stark.

**Ground 4 – Terry Warrior Testimony**

Petitioner argues that his counsel was ineffective for failing to independently lodge objections and motions regarding the exclusion of testimony of Terry Warrior. At the beginning of the trial, the court invoked the Rule of Sequestration and ordered anyone except the parties who would potentially be a witness to remove themselves from the courtroom. Terry Warrior remained and watched her son Sean Warrior testify about the phone calls between Petitioner and Mr. Collins. Sean testified that Petitioner barely knew Mr. Collins and that his cousin Milton Warrior was dishonest.

On cross-examination, the government asked Sean whether he had been a victim of witness intimidation by Mr. Washington and whether his mother had been held at gunpoint. Mr. Washington's attorney sought to have her testify. The court excluded her testimony based on the Rule of Sequestration.

The court need not reach whether his counsel was deficient, as Petitioner did not suffer prejudice from the exclusion of Ms. Warrior's testimony. As the Tenth Circuit held in

9

Petitioner's appeal, there was substantial, independent evidence of Petitioner's guilt, including multiple tape-recorded conversations between Petitioner and Mr. Irving about killing Officer Stark and evidence that Petitioner wanted to kill Officer Stark as far back as 2006. Additionally, there were inconsistencies in Sean Warrior's testimony. Petitioner did not suffer prejudice from the exclusion of Terry Warrior's testimony.

**ALLYNE**

With no argument, Petitioner moves to supplement his habeas motion with the recent Supreme Court decision in <u>Allyne v. United States</u>, 133 S.Ct. 2151 (2013). The court grants the motion. In <u>Allyne</u>, the Supreme Court held that any finding of fact that aggravates the legally allowed range of possible punishment "constitutes an element of a separate, aggravated offense that must be found by the jury." <u>Allyne</u>, 133 S.Ct. 2162. <u>Allyne</u> is not applicable in this case. As noted above, the jury found that Petitioner possessed with the intent to distribute an amount of cocaine in excess of 5 grams. As to both counts of conviction, all elements affecting the statutory maximum and mandatory minimum were charged in the Indictment, submitted to the jury and found beyond a reasonable doubt. Accordingly, Petitioner's motion is denied on this ground as well.

**CONCLUSION**

As stated above, Petitioner's motion to supplement his habeas motion [Docket No. 10] is GRANTED. For the reasons stated above, Petitioner's habeas motion is DENIED on all grounds. An evidentiary hearing is not necessary in this matter, and thus Petitioner's request for

one is denied. Petitioner's request for appointed counsel is also denied.

It is so Ordered this 9th day of December, 2014.

**Dated this 9th day of December, 2014.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma